Jackson *v.* State.

(*Nashville,* December Term, 1936.)

Opinion filed February 13, 1937.

B. O. Briley and R. C. Boyce, both of Nashville, for plaintiff in error.

Nat Tipton, Assistant Attorney-General, for the State.

Mr. Justice DeHaven delivered the opinion of the Court.

Plaintiff in error, hereinafter referred to as defendant, on separate presentments, was convicted of the offenses of carrying a pistol and a black-jack, and his punishment fixed at a fine of $50 in each case. By agreement, the two cases were tried together. Defendant has appealed to this court and assigned errors.

Section 11007 of the Code makes it a misdemeanor to carry a pistol or a black-jack for the purpose of going armed. Section 11012 of the Code provides:

"The provisions of section 11007 shall not apply to any person employed in the army, navy, or marine service of the United States, or to any officer or policeman while *bona fide* engaged in his official duties, in the execution of process, or while searching for or engaged in arresting criminals, nor to persons who may have been summoned by such officers or policeman in the discharge of their said duties, and in arresting criminals and transporting and turning them over to the proper authorities."

Defendant, on August 2, 1936, the time in question, was a deputy game warden of the State of Tennessee, and resided in Nashville. One Bud Blackman, a deputy game warden, residing in Robertson county, had some information that foxes were being kept confined on the farm of a Mr. Weldon. Blackman sent word to defendant, at Nashville, to come to Springfield and go with him to investigate the matter of the foxes being penned up. This message was sent on Friday or Saturday. On Sunday following, defendant left his home, in Nashville, in an automobile, with several members of his family, armed with a pistol and a black-jack, and proceeded to Springfield, where he narrowly escaped an automobile collision with a car driven by the prosecutor, Oscar Hunter. An argument ensued, and there is con-

siderable testimony to the effect that defendant drew his black-jack and threatened to strike one of the occupants of the Hunter car. This is denied by defendant. The pistol was not taken out of the automobile. Defendant had no process for execution.

Chapter 51, Pub. Acts 1931, known as the Game and Fish Law, in section 8 thereof, provides as follows:

"That the State Game Warden and his deputy game wardens shall have the power:

"1. To enforce all laws relating to wild animals, wild fowl, wild birds and fish, and to go upon any property, outside of buildings, posted or otherwise in the performance of their duty.

"2. To execute all warrants and search warrants for the violation of the laws relating to wild animals, wild fowl, wild birds and fish.

"3. To serve subpoenas issued for the examination, investigation and trial of all offenses against the laws relating to wild animals, wild fowl, wild birds and fish.

"4. To arrest without warrant any person found in the act of violating any of the provisions of this Act or in pursuit after such violation.

"5. To seize and take possession of all wild animals, . . . taken or killed or had in possession or under control, . . . in any manner or for any purpose contrary to the laws of Tennessee."

A violation of any of the several regulations contained in the act is declared to be a misdemeanor, punishable by a fine of from $10 to $25, except the capture, wounding, or killing of fish by means of poison or explosives, which is punishable by a fine of not less than $100 nor more than $300.

The sole question presented for determination arises

on defendant's insistence that he had the legal right, as deputy game warden, to carry a pistol and a black-jack because he was, at the time in question, searching for criminals, and, therefore, under section 11012 of the Code, was excepted from the prohibition contained in section 11007 of the Code.

The evidence does not support the contention that defendant was searching for criminals while carrying the pistol and the black-jack. He left home with these weapons, not in search of criminals, but to go with Blackman to make an investigation for the purpose of ascertaining whether or not the offense of keeping foxes captive had been committed. Under subdivision 4 of section 8 of the Game and Fish Law, the game warden and the deputy game wardens are given the power "to arrest without warrant any person found in the *act* of violating any of the provisions of this Act *or in pursuit after such violation.*" (Italics ours.) Defendant had no warrant, and, under the above provision of the statute, was empowered to arrest without a warrant only when a person was found "in the act" of violating the statute, "or in pursuit after such violation." Neither Blackman nor defendant had found any person in the act of violating the statute; hence there could have been no pursuit in which an arrest could have been made without a warrant. This being true, and defendant having no criminal warrant in his possession, at the time, for execution, he did not come within the exception contained in section 11012 of the Code.

*State* v. *Rogers,* 84 Tenn. (16 Lea), 510, is relied on by counsel for defendant. In that case the court held that a policeman of a city, regularly appointed, uniformed, and assigned to duty, was not liable to indict-

ment for carrying a pistol. "Either this would be so," said the court, "or these guardians of the public peace would be compelled to venture on many arrests of the worst criminals, both by day and night, in our cities, it may be murderers or burglars, themselves armed and ready to use such arms, while the policeman can only use his club in support of his authority. Did the Legislature so intend?" The court concluded that both the spirit and the intent of the act fairly exempted the policeman from its penalties, under the facts of the case. Following the line of reasoning adopted by the court, it cannot be maintained that a deputy game warden, whose only duty is concerned with petty misdemeanors, should be permitted to carry any of the prohibited weapons, except under conditions set forth in section 11012 of the Code.

The result is that the judgments of the trial court must be affirmed.